IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TRAVIS FORTUNE,

        Plaintiff,

v.                                  CIVIL ACTION NO.   2:20-cv-00339

THE CITY OF LOGAN and
J. D. TINCHER,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant City of Logan's Motion for Summary Judgment* (Document 51), the *Defendant City of Logan Memorandum of Law in Support of Its Motion for Summary Judgment* (Document 52), the *Plaintiff's Memorandum of Law in Opposition to Defendant The City of Logan's Motion for Partial Summary Judgment* (Document 56), the *Defendants' Reply to Plaintiff's Response to Defendants' Motion for Partial Summary Judgment* (Document 59), and all attached exhibits.   For the reasons stated herein, the Court finds that the motion should be granted in part and denied in part.

**FACTS**

The Plaintiff, Travis Fortune, filed the *Amended Complaint* (Document 10) in this matter on July 24, 2020.   Mr. Fortune brought the following causes of action: Count One – Excessive Use of Force Under 42 U.S.C. § 1983, as to Officer Tincher; Count Two – Battery, as to Officer Tincher; Count Three – Negligence, as to Officer Tincher; Count Four – Intentional Infliction of

1

Emotional Distress, as to Officer Tincher; and Count Five – Negligent Hiring, Training, and Supervision, as to the City of Logan. The Court granted a motion to dismiss as to Count Three, and any claims against the City of Logan contained in Counts Two and Four.

The Plaintiff's claims arise out of an arrest on September 14, 2019.[1] He and Ernest Drummer were walking along railroad tracks near an abandoned building in Logan, West Virginia. JD Tincher, then an officer with the Logan Police Department, went to the nearby abandoned buildings due to recent incidents of people starting fires in abandoned buildings. He was accompanied by Nick Ferrell, a Logan firefighter, and they traveled in a fire rescue pickup truck. As they were leaving the abandoned building, Officer Tincher observed Mr. Fortune and Mr. Drummer walking along the railroad tracks, wearing backpacks. He was suspicious because of recent incidents involving people selling drugs from backpacks, so he decided to stop them for trespassing on the railroad property.

Officer Tincher approached the men and conducted a search. The parties and witnesses offered slightly differing accounts of the timeline and positions of each individual. However, they broadly agree that Officer Tincher searched the men and their backpacks and found drug paraphernalia. According to Mr. Fortune, Officer Tincher became angry when he claimed that a set of scales were used to weigh packages for shipment for eBay sales. Although he was compliant with all directives and offered no resistance, Officer Tincher punched him on the right side of his face, knocking him to the ground.[2] Officer Tincher jumped on top of him, rolled him

---

[1] The facts are recounted in the light most favorable to the Plaintiff as the non-moving party.
[2] Officer Tincher testified that he moved to arrest Mr. Fortune after finding brass knuckles, and Mr. Fortune pulled away and attempted to elbow him. He responded by hitting him as a take-down maneuver. According to Officer Tincher, Mr. Fortune remained combative, and he hit Mr. Fortune again while he was on the ground, after which he gained compliance and was able to arrest Mr. Fortune.

over, and pulled him up, then placed him in the backseat of the truck. During the brief drive to city hall, Officer Tincher "turned around in the vehicle and just smacked me." (Fortune Depo. at 22::3-4) (Def.'s Ex. 9, Document 51-9.) He covered his face with his hands and put his head down, trying to avoid being hit again because he believed his jaw was broken from the previous punch. He stated that he "was spitting out chunks of teeth," his jaw was not properly connected, and he was bleeding from cuts on his mouth during the drive. (Fortune Depo. at 23::19-20.)

Mr. Fortune, Mr. Drummer, and another man who had been arrested that day, Stevie Mullins, were taken into the police station while Officer Tincher completed paperwork. During the initial portion of the deposition, Mr. Fortune stated that he was not struck again while in the police station. Under later questioning by his attorney, he recalled that the Mayor came into the police station, made some statements regarding drug users, and Officer Tincher slapped him in the face again.

Officer Tincher then drove Mr. Fortune, Mr. Drummer, and Mr. Mullins to the jail. Mr. Fortune stated that he needed medical attention for his jaw but did not receive treatment until he had been moved to pod, after which he spent the rest of his time in jail in the medical unit. He required multiple surgeries and dental reconstructive work as a result of his injuries.

Officer Tincher obtained certification as a law enforcement officer in 2013. He was hired as a police officer with the City of Logan Police Department in 2017 and has since left to take a position with the Mingo County Sheriff's Department. He testified that his training at the police academy included training in defensive tactics. He recalled three or four physical altercations as a police officer prior to the incident with Travis Fortune. He was not aware of any investigations or complaints regarding his conduct while he was with the Logan Police Department, though he

was named as a defendant in two other lawsuit alleging excessive force. In one, the plaintiff voluntarily dismissed him as a defendant, and in the other, a jury found that he had not used excessive force. Officer Tincher testified that he was aware that it would be unlawful to punch a suspect who did not pose a threat and was not resisting.

The Logan Police Department required officers to complete the Police Academy within a year of being hired to become a Certified Police Officer. To maintain that certification, officers were required to complete sixteen hours of training annually, for which they could choose from any of a variety of classes. As part of the hiring process, prospective officers were also required to take a civil service exam and a physical agility test. Additionally, officers were required to be familiar with state and local laws and ordinances. They were provided a copy of the Logan Police Department policies and procedures and signed a form indicating that they had received those documents but were not tested on them. The Logan Police Department policies prohibited unwarranted use of force, which the former Chief of Police, Paul D. Clemens, testified would include punching a compliant suspect or hitting a handcuffed suspect. Police Department policy required an arresting officer to notify a supervisor and summon an ambulance if an arrestee required medical attention. Another policy required officers to complete a use of force form before the end of a shift if they used physical force in the course of their duties.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).  A "material fact" is a fact that could affect the outcome of the case.  *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).  A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.  *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23.  When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party.  *Hoschar*, 739 F.3d at 169.  However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.  "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986).  If

5

disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

The City of Logan argues that it is entitled to summary judgment on the claim of negligent hiring, training, and supervision. It argues that it is entitled to immunity under West Virginia Code §29-12A-1 *et seq.* because the Plaintiff has not produced "evidence of a negligent act on the part of any City employee that proximately caused" his injuries, as required to meet an exception to the statutory immunity provisions. It further argues that the Plaintiff has not produced evidence of negligence in the hiring of Officer Tincher or evidence that any information could have been uncovered that would have revealed that Officer Tincher was likely to use excessive force.

The Plaintiff argues that the City of Logan fails to adequately train officers on its policies, including policies regarding the use of force. He argues that "a jury may find that had Officer Tincher been tested on, and was properly trained to follow, Logan PD policies and procedures, Plaintiff's injuries never would have occurred." (Pl.'s Resp. at 4.)

West Virginia Code Section 29-12A-1 *et seq.* establishes immunity from liability for political subdivisions under many circumstances. Section 29-12A-4(c) establishes exceptions to that immunity. As relevant to this case, "Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting

6

within the scope of employment." W.Va. Code § 29-12A-4(c)(2). As a general matter, a supervisor who is negligent in hiring, training, or supervising employees would be acting within the scope of employment.

Under West Virginia law, to state a claim for negligent supervision or training, a Plaintiff must show that "[a municipal defendant] failed to properly supervise [an employee officer] and, as a result, [the employee officer] proximately caused injury to the [plaintiff]." *Woods v. Town of Danville, W. V.*, 712 F.Supp.2d 502, 515 (S.D. W. Va. 2010) (citing *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 718 (W. Va. 2000); *see also W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.,* 766 S.E.2d 751, 773 (W. Va. 2014) (finding that although negligent hiring, training and supervision claims against state agencies involve discretionary functions for immunity purposes, no such limitations apply to claims against political subdivisions). In *Taylor*, the West Virginia Supreme Court "treat[ed] negligent supervision like other claims based in negligence." *Woods* at 515. The West Virginia Supreme Court has applied the following test for claims of negligent hiring or retention:

> [W]hen the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?

*McCormick v. W. Virginia Dep't of Pub. Safety*, 503 S.E.2d 502, 506 (W.Va. 1998).

The Plaintiff's theory rests, in part, on his evidence that Officer Tincher's actions violated Logan Police Department policies and procedures regarding the use of force, combined with the Logan Police Department's failure to provide detailed training on its policies and procedures. A

failure to adequately train officers on local policies and procedures "will not ground a failure-to-train claim because it cannot satisfy the causation requirement." *Weigle v. Pifer*, 139 F. Supp. 3d 760, 792 (S.D.W. Va. 2015) (Copenhaver, J.) (addressing a failure to train claim brought pursuant to 42 U.S.C. §1983 and *Monell*, explaining that "deficient training in constitutional rights, if proven, may well have contributed to constitutional harm, [but] it is difficult to see how a lack of knowledge of the department's policies could have done so.")  To the extent the policies were designed to prevent excessive use of force, however, the evidence presented by the Plaintiff suggests that officers did not receive sufficient training on those policies to ensure knowledge of constitutional rights and limits of their authority.

The City of Logan has presented no evidence that it ensured that officers regularly interacting with the public, including investigating and making arrests for minor offenses, received training regarding citizens' constitutional rights and appropriate use of force. Officer Tincher's testimony describing his time at the police academy indicated that he received training on defensive tactics, boxing, and take-down methods, but did not address whether he received training related to ensuring that officers avoid excessive use of force. The former Chief of Police for the City of Logan testified that new officers hired by the City of Logan could be hired "without any training at all, but they have one year by law to go to the academy and become a certified police officer." (Clemens Depo. at 11::19–21) (Pl.'s Ex. 1, Document 56-1.)  Counsel for the Plaintiff inquired: "So other than that, there was no other additional training that was required?" and he stated, "No, sir."  (*Id.* at 11::22–24.)

As in *Weigle*, "a reasonable jury could conclude that officers who were better-trained regarding citizens' constitutional rights would not have escalated a minor traffic stop into a

situation involving a forcible arrest, or that they would have used force appropriately during the incident." 139 F. Supp. 3d at 792. A jury could reasonably conclude that a municipality and its employees breached a duty to the public, including the Plaintiff, by empowering officers to use force and make arrests without training them to ensure that they do not violate citizens' constitutional rights in the process. A reasonable jury that accepts Mr. Fortune's account of his interactions with Officer Tincher could find that Officer Tincher violated his constitutional right not to be subject to excessive force. The jury could also reasonably infer that, had Officer Tincher received adequate training on appropriate use of force and ongoing supervision to ensure compliance with such training, he would not have punched a compliant suspect, breaking his jaw. Therefore, the Court finds that the City of Logan has not presented evidence establishing that it is entitled to summary judgment with respect to the negligent training and supervision claim.[3]

However, the Plaintiff presented no evidence that would permit a jury to find that the City of Logan was negligent in hiring Officer Tincher. There is no evidence that, at the time he was hired, a background check would have revealed a history of excessive use of force or other warning signs, such that it was reasonably foreseeable that he would engage in the type of misconduct alleged in this case. Therefore, the City of Logan's motion for summary judgment as to the claim for negligent hiring should be granted.

---

3 Neither party fully separated the evidence and argument related to negligent training and supervision. Although the evidence is more focused on negligent training, training and supervision are closely related as legal claims and in practice, and so the Court has not separately addressed the claim of negligent supervision.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendant City of Logan's Motion for Summary Judgment* (Document 51) be **GRANTED** as to the negligent hiring and **DENIED** as to negligent training and supervision.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: October 5, 2021

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA